Okay, the second case this afternoon is Smith v. Linder, that's case number 4, 131072. And for the appellant, we have Mr. Bill Allison, and for the applant, we have Algamontes Cazillas. Okay, thank you. Mr. Allison? Yes. If the court would please, Mr. Cazillas. The, first of all, the caption in the case, the Smith, my client, is the plaintiff, obviously. And the only defendants involved at this point is Bradford victim, Adams Insurance Company. Correct? Why not? Yes. Okay. We'll make sure we get that caption correct when we prepare an order. All right. All right, sir. Shannon Smith, my client, and the plaintiff, in late 2006 or early 2007, purchased a house in the country near Virginia, Illinois. She and her husband were going to renovate it. They worked on that during the summer. When she bought the place, she bought a homeowner's policy, a fire insurance policy, through Mr. Joseph Redshaw. His exact status, we may talk about later. He had an agreement, but we'll get to that. On September 27th, in the early mornings, this house caught fire and was destroyed. Plaintiff called the insurance agent, Joe Redshaw, and said, we've had a fire. And he said, oh, I'm sorry, your policy has lapsed. So at that point, the plaintiff, the next action they took was to pay the past due premium. The premium was past due on the date of the fire. The insurance company had canceled the policy, effective September 22nd, for nonpayment. And they sent her a notice on the 24th. The problem is that she had moved. They were living in Springfield. The property was in Virginia. They weren't occupying that. They had moved before this fire. My client, the plaintiff, went to the insurance person that she brought it from, agent or whatever he was, producer, and said, we're moving to a different address. Did your client receive the notification of cancellation? She did not, Your Honor. She did not. She had already moved, and she did not receive the cancellation or the notice that it was due. Thereafter, as I said, they left a check at the office of the insurance agent or producer or whatever he was. As soon as they found out there had been a fire, they left a check for that. In other words, they attempted a tender, but the tender, the premium, was rejected by the insurance company. Bradford, the defendant, learned of the fire. They knew that the policy had been canceled. They also knew that it had been sent to the wrong address. As stated by Mr. Kozelius as attorney for the defendant in a pleading in the third-party action in this same lawsuit, he makes the statement, Redshaw had an obligation to share with Bradford information regarding the changes of Shannon Smith's status, including her change of address. On information and belief, Redshaw was informed by Shannon Smith of her change of address. Redshaw failed to share that information with Bradford. I see a little puzzlement here. Maybe I should restate that. This is at the day of the fire. It's a work day. The workers at Bradford Victor Adams were there. They found out, I think through the agent, that there had been a fire. They realized that the policy was canceled the 24th, but once they discovered this, what I just read, I feel certain that they believed either the policy was ineffective or at least flawed. If Mr. Redshaw, if he was truly an ordinary old agent, the knowledge of the agent is the knowledge of the person, that the address had changed. I don't know that that's, in our perspective, he is a regular agent. He had the obligation by contract to inform the insurance company if her status changed. More about that in a minute. Bradford Victor Adams thought that their cancellation was either flawed, ineffective, no good. So they issued another cancellation on September 22nd. Dated September 27th. And the language on the insurance policy on the declaration page, which tells what the coverages are and so forth, for September 27th, is as follows, the preceding sentence. This declaration page with policy jacket, forms and endorsements, if any, issued to form a part thereof, complete the above numbered policy. These declarations replace all prior declarations. The prior declaration was dated September 24th. That cancellation, this had the same language as this one about these declarations replace all prior declarations. If the 27th replaced the one of the 24th, the plaintiff had an insurance policy that had been canceled, or at least they thought it had been canceled, and reinstated by declaring it by doing this second declaration. Clearly stating these declarations replace all prior declarations. That's reinstating their policy. On the same day, Bradford, in addition to the, I'm not sure of the time. When you have I think a couple minutes left, the yellow light would come on in front of your left hand there. No, right up here on the podium where you're standing. They also wrote a letter to the plaintiff. The above claim is being denied due to the cancellation of your policy due to non-payment of premium. Your premium was due on September 9th. When we didn't receive your payment, we sent you a lapse notice, granting you until September 22nd, 2007 to make your payment. After no payment was made, we canceled your policy on September 24th, 2007. It's our belief that this policy was reinstated on September 27th, that based on the terms of the policy, they had 10 days within which to pay the premium at this point. They tendered the premium the same day and Bradford, the cancellation of the policy to me, it was an unauthorized, it was an improper cancellation, the first cancellation. The second cancellation we think also constitutes a repudiation of their duty to perform. Of course, the whole idea of anticipatory repudiation is that one party that has a duty to the other on the time performance is due indicates that he will not perform. They say in here the policy was canceled and your claim is denied. They still had at least 10 days. They had 10 days within which to pay the premium if they hadn't paid the premium. Can I ask you a question regarding the procedural posture of the case and where it is for this court? It's my understanding the trial court granted summary judgment in favor of the insurance company and it was on the insurance company's affirmative defense, which was as to the cancellation issue. Affirmative defense was that the policy was canceled. So that's how it gets to us, the summary judgment granted that. I don't have the order in front of me. That's not my recollection. What was the basis of the trial court's grant of summary judgment for the insurance company? I don't recall stating any basis within the pleadings or whatever. It said that the policy was canceled and judgment was entered for the defendant.  Well, I think that's the only basis. Let me back up even further here and that is as to the entry of summary judgment to begin with. The summary judgment was entered in favor of the insurance company here, the defendant. The insurance company had the burden of going forward on the motion for summary judgment and so it had to establish either that there was affirmative matter that would bar the claim or that there was some evidence to establish its right to summary judgment and that's the evidence part that I'm curious about. The pleadings here were unverified, right? Correct. Were there affidavits filed in support or against the counter motions for summary judgment? We had depositions. We had the documents that I've talked about. That's basically it. I had the deposition attached to your brief. I don't want to misstate a name here. Beverly Thick. Were there other deposition transcripts that were attached to the motions for summary judgment? I think Shannon Smith was. What I'd like to know is was there evidentiary support for the defendant's motion for summary judgment and for plaintiff's motion for summary judgment? Was that by way of deposition transcript as opposed to affidavits? I don't recall that the defendant submitted a deposition. Let me ask this then. Is there evidentiary support that would establish the policy that was in effect at the time and that would establish as evidence that those letters that have been referenced here, the lapse notices, the cancellation notices, that those were in fact... But it was by sworn testimony that those were established? The documents? Yes. Well, as to what I read from Mr. Kazeela's pleading, I think those are admissions. Redshaw had an obligation to share the information, the information and belief. He knew the change of address. Well, what I'm doing is I'm actually suggesting something that would be to your benefit. So maybe this is better asked of Mr. Kazeela's. But what evidentiary support is there for the trial court's summary judgment in favor of the defendant here? Evidentiary support, I'll emphasize. There is a statement by Mr. Kazeela's where he recites some facts. The pleading is unverified, correct? Is there any sworn testimony or verified pleading? And Mr. Allison, I don't mean to interrupt your presentation here and the record will bear it out, but this was just something I thought maybe you would be able to address and I'll ask it of Mr. Kazeela's. I would like to respond to what you're asking in this way also. It's my understanding, and we've cited a case in our brief, when you have cross motions for summary judgment, you are stating to the court, the trial court, that virtually the facts that have been submitted in the summary judgment procedure, the trial court below, become the facts on appeal, almost like a stipulation. Those are the facts that you rely on on appeal. And so that's kind of maybe 45 degrees off from where you're looking at, but I have prepared, assuming that that was correct, and we've stated the undisputed facts, at least I labeled them undisputed in the motion for summary judgment, we've repeated those undisputed facts in our brief here, believing that those were the only facts that this court would consider, and I believe it's a de novo proposition that the appeals court can make the decision de novo. I've cited the case. I think that pretty well states what our position is, that the cancellation of the insurance policy in the 27th was without, there was no basis for it because the policy had been reinstated, and then the letter stating we're denying your claim even though we reinstated the policy, that's anticipatorily expecting, you can expect, you can take to the bank, they're not going to do anything. Okay, thank you for your attention. You'll have rebuttal. Please proceed. This is an extremely simple case, I submit your honors, from the perspective of the defendant. The defendant issued an insurance policy to the plaintiff, and it was run on quarterly premium payments. They moved sometime, as counsel said, which we did not know about. Plaintiffs never notified Bradford of movement. They've paid at least one quarterly premium after moving, which means that the mail followed them, at least for one quarterly payment. In any event, the premium issue in this case was due on September 7th. On September 12th, my client sent out a 10-day notice, pursuant to provisions of the policy, that unless you pay within 10 days plus a $20 late charge, your policy will be canceled. On 22nd of September, that period ran out. Mr. Allison argued that his client never got that notice. That is not my burden, your honor. The insured has the obligation to advise us. We have no idea whether they received it or not, sir. There is no evidence one way or the other in the record of this case. There is a claim by the plaintiffs... Well, the policy does say you're supposed to send the notice to the last known address. That's precisely what we did. And it didn't come back, your honor. But he has argued that an address change was communicated to the agent that sold the policy. That's the agent, not my agent. No, that's no agency... There's no agency relationship with your client, then? I'm sorry? There is no agency relationship with your client? Excuse me? I'm sorry. He's one of the brokers that sells our insurance policy in Central Illinois. And so if the address correction was communicated to him, that doesn't affect your client at all? That is correct, sir. That's interesting. So there's no agency relationship, then, is the answer to my question? There is a very limited relationship. And what are the limitations of it? The limitation is that he can collect premiums and send them on to us by retaining his commission. That is the extent of it. Okay. Well, who originally communicated the address of the insurer to your client? Was that the insurer? I have to defy you, your honor. No, I mean when they were contractors originally entered into. Oh, the original address was supplied to us by the agent, yes. What agent? By the broker. Okay, so the original address is supplied by the broker, and then a new address is supplied to the broker, but that broker doesn't have to communicate that to your client, and there's no agency relationship there? As a matter of fact, I disagree with counsel's statement that, in fact, a new address was provided to the broker appropriately. Wow, that's a different. That's a different issue, and I'm surprised that that question was even raised by counsel, because the question before this court is whether the summary judgment was properly entered, and I submit, your honor, that the cancellation, which was entered, which was due on the 22nd, but was, in fact, issued on the 24th because the 22nd was a Saturday, so they got two extra days, and even appellant in their brief, their reply brief, page three, plaintiff makes no argument that a cancellation of September 24th was indefinite or doubtful. They concede that this cancellation was, in fact, done. Now, counsel argues to you today that somehow the policy revived, and the whole period of cancellation started from scratch on the 27th. The document he refers to is merely an information page as to what insurance is available, and that page says the policy has been canceled. It has nothing to do with a new issuance of the policy. We now know on the morning of the 27th that there was a fire, and counsel asks you to believe that the insurance company says, oh, well, let's cancel it again just in case our first cancellation was wrong, and issue another cancellation document. In any event, the court asked a question about the summary judgment. I will quote a sentence out of it. The court finds that plaintiff failed to comply with their obligations to pay premiums for the insurance coverage. The defendant followed the provisions of the policy by leasing a past notice upon the plaintiff's failure to pay the premium properly, canceled the policy on September 24th, 2007. So your client's affirmative defense was there had been a cancellation of the policy. Was the court's summary judgment, entering judgment on that affirmative defense that there was cancellation of the policy? That is precisely correct, Your Honor. All right. You heard the questions I asked of Mr. Allison in regards to the evidence supporting entry of summary judgment. What did you provide to the trial court in the way of evidence? Two documents, Your Honor. I'm sorry. Did you finish? I apologize. I think it's C706 and C705, which are the notices, one of being late and second of cancellation, and a deposition of Ms. Reagan, who was the manager of the insurance company, was made available to the judge. Okay. And this is what I wanted to find out. Was there evidentiary support via sworn testimony or a verified pleading that would identify those cancellation notices as evidentiary? Yes, sir. Okay. So someone swore to the accuracy. Ms. Reagan's deposition. I see. Supported that. All right. And the policy itself, was there evidence identifying the policy at issue in this case? Yes, sir. It was part of the summary judgment papers. Okay. And likewise, it was also identified in the deposition? Is that what you're saying? You may have had a request to admit. I don't think there was ever an issue about the existence of the policy, sir. Well, it's always an issue in a summary judgment matter, so it has to be evidence properly before the court. I noticed it was attached to the complaint, but it was an unverified complaint and unverified answer. So I'm just wondering how it got before the court in terms of evidence. As part of the specifically – sorry, Your Honor, I don't remember. I believe it was part of Ms. Reagan's deposition testimony that this was the policy. It will be in the record and we can look. Please. Actually, the case is not that complicated, I don't think. In any event, I would just like to make one more point about this alleged reissuance or rehabilitation of the policy on the 27th. The document in question, I believe, is part of the plaintiff's initial brief. Here it is, Declaration Sheet for September 27th, that counsel has spoken about so eloquently. That merely states that if you check that policy on that date, it is canceled. The cancellation documents, which I gave you the reference numbers to, are a totally different document, differently configured, differently created. And I submit that the Declaration Sheet of 927 is merely a statement of the status of the policy on that date. And not a new cancellation notice. The policy was dead as of the 24th. The premium was due on the 9th. It wasn't even tendered until after the fire. To expect that the insurance company would say, okay, we'll start the cancellation process all over again on the 27th, it's irrational. It defeats imagination. Unless there are further questions, I won't bore you anymore. I don't see any questions. Thank you for your argument. Is there any rebuttal? I don't understand what Mr. Casino is saying about that Declaration Sheet. Because it says we replace. The previous one is replaced. Now, of course, you can't live with that. But that's what both of them say. And it's dated September 27th. The other one is dated September 24th. This is a town landlord policy at the top. They can't live with that, of course. But it's dated the 27th. The one that replaced the one of September 24th. There is what I almost say an elegant, that's overused. I don't believe that whose agent was whose agent is a factor in the final decision. If that uncertainty led to them issuing a new cancellation. The motivation that they had doesn't make any difference. They got together. And as we said before, Mr. Casino stated personally. Bradshaw had an obligation to share with Bradford regarding the changes of Shannon Smith's status, including her change of address. But again, their motive in issuing that second declaration is not really important. What is important is that they did the second cancellation because they thought the first one was no good. That's the only reason they would have from what he's saying to do that. They issued a second one because they found out that day it went to the wrong address and that he hadn't reported it to the new address to Bradford. It can be that simple. They had no justification to do it, the cancellation, because the policy has been reinstated by its own terms. If there's any ambiguity, it goes against the insurance. So we think all that is important is there was a cancellation without any basis for it. That cancellation was communicated to the insured telling her it was canceled the 24th and not telling the insured that there was another cancellation on the 27th. That is misrepresenting. We think that when these facts are considered in the light we're talking about, that you will rule for the plaintiff. Thanks to both of you. The case is submitted and the court stands in recess.